UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURT R.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C22-5609-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE MATTER WITH PREJUDICE**

Plaintiff appeals the denial of his application for Disability Insurance Benefits. He contends the ALJ erred by (1) failing to analyze the disability rating from the Department of Veterans Affairs; (2) inadequately evaluating the VA claim examinations (aka compensation and pension or "C&P" exams) of psychologist Dr. Daniel Scharf, Ph.D., Physician's Assistant Mr. Roger Frey Martin, PA-C, and physician Dr. Ishik C. Tuna, M.D.; and (3) relying on VE testimony that did not establish plaintiff could perform other work existing in significant numbers in the national economy. Dkt. 13. The Court finds that plaintiff has failed to acknowledge that 20 C.F.R. § 404.1504 provides that the ALJ need not analyze VA determinations of disability; has failed to demonstrate harmful error in the ALJ's evaluation of the medical evidence; and miscomprehends what evidence demonstrates a significant number of

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 1

jobs. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 32 years old, attended some college, and has worked as an infantry indirect fire crew man member. Tr. 46, 53, 70. In December 2020, he applied for disability benefits, alleging disability as of January 1, 2015. Tr. 199. In February 2022, the ALJ held a hearing and issued a decision. Tr. 20–39, 44–76. The ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2015, through the date last insured of December 31, 2020. Tr. 22. The ALJ found that plaintiff had the following severe impairments during the relevant period: lumbar degenerative disc disease; migraine; depression; anxiety disorder; and PTSD. Tr. 23. The ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 23–25. The ALJ assessed that plaintiff had during the relevant period the residual functional capacity ("RFC") to perform light work with additional physical and mental restrictions. Tr. 25–37. At step five of the sequential evaluation, the ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy, including representative occupations such as production assembler (12,000 positions), document preparer (19,000 positions), and agricultural produce sorter (10,000 positions). Tr. 37–38. The ALJ therefore determined that plaintiff was not disabled before the date last insured. Tr. 38–39.

As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 6–8.

**DISCUSSION**

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Plaintiff has failed to demonstrate that the ALJ's decision was not supported by substantial evidence or applied the wrong legal standard with respect to (1) considering the VA's disability rating; (2) evaluating the examinations by Dr. Scharf, PA-C Mr. Martin, or Dr. Tuna; and (3) utilizing the VE testimony about work existing in significant numbers in the national economy.

**1. Consideration of the VA's Disability Rating**

Plaintiff contends that the ALJ committed harmful, clear error by failing to give great weight to plaintiff's VA disability rating because the failure to do so was contrary to *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Dkt. 13, at 4–6. That proposition based on *McCartey* has, however, been superseded by 20 C.F.R. § 404.1504.

Section 404.1504 provides that for "claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." Plaintiff filed his application for benefits in 2020. Thus, the ALJ was not required to provide any analysis of the VA disability determination. *See, e.g., Christophe P. v. Commissioner of SSA*, 2023 WL 2467872, at *4 (E.D. Wash. Mar. 10, 2023); *David Y. v. Commissioner SSA*, 2022 WL 14746409, at * (D. Or. Oct. 24, 2022).

**2.   Evaluating the Medical Opinions of Dr. Scharf, Mr. Martin, and Dr. Tuna**

Under the revised regulations, the ALJ must nevertheless "consider all of the supporting evidence underlying the other governmental agency . . . decision." 20 C.F.R. § 404.1504. Plaintiff contends that the ALJ improperly evaluated the C&P exams by Dr. Scharf, Mr. Martin, and Dr. Tuna. Dkt. 13, at 6–16. The Court finds that the ALJ's evaluation of the opinions of Dr. Scharf, Mr. Martin, and Dr. Tuna was supported by substantial evidence and did not apply the wrong legal standard. To the extent the ALJ committed error with respect to Dr. Scharf's or Dr. Tuna's opinions, it was harmless: the ALJ gave several, valid and supported reasons for discounting Dr. Scharf's opinion and the ALJ discounted Dr. Tuna's opinion and the underlying symptom testimony despite not mentioning Dr. Tuna by name.

Plaintiff contends that the ALJ erred by not providing "persuasive, specific, and valid reasons for the rejection of Dr. Scharf's, Roger Frey Martin's, and Dr. Tuna's medical opinions." Dkt. 13, at 6. This misstates the standard for evaluating medical evidence for disability applications, such as this one, filed after March 27, 2017. Revised regulations supplant the hierarchy governing the weight an ALJ must give medical opinions and the requirement that the ALJ provide specific and legitimate reasons to reject a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Instead the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in his decision how persuasive he finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he considered the other remaining factors,

unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792.

      **a. Dr. Scharf**

In a July 2019 C&P exam, examining psychologist Dr. Scharf opined that plaintiff would likely have difficulty with reliability in attending a job due to difficulties with anxiety and pain related to PTSD when leaving his home; that plaintiff would likely have periodic difficulty with irritability when working around others and would work best on a job which involved little interaction with others and was loosely supervised; that plaintiff would have periodic difficulty sustaining attention to complete job tasks due to difficulty concentrating; and that plaintiff is generally able to understand and remember instructions. Tr. 597–98. The ALJ found Dr. Scharf's opinion to be unpersuasive because (1) it was based on a one-time evaluation of the plaintiff, rather than the record as a whole during the relevant period; (2) the opinion that plaintiff's anxiety when leaving his home would significantly affect his work attendance was inconsistent with plaintiff's daily activities during the relevant period such as interacting with members of a car club, a go-cart club, and the dog show community, as well as his ability to work outside of his home for months; and (3) the opinion that plaintiff would have difficulty sustaining attention to complete work tasks for a normal workday or workweek was inconsistent with his daily activities of being able to watch movies, drive for an hour, groom his large dogs, show his dogs, detail his car, work ten-hour days, and play video games. Tr. 36.

1    Plaintiff contends that the ALJ erred by suggesting that Dr. Scharf had not considered
2    any evidence from the relevant period other than his single physical examination of plaintiff.
3    Plaintiff is correct. Dr. Scharf reported having reviewed plaintiff's VA e-folder as well as the
4    VA's computerized patient record system (or "CPRS") for the relevant period. Tr. 602. As
5    confirmation, Dr. Scharf referred to plaintiff being in current counseling at the VA, having been
6    diagnosed with PTSD, and being currently prescribed medications through the VA—information
7    presumably gleaned from a review of plaintiff's VA records for the relevant period. *See* Tr. 599–
8    600.

9    The ALJ's error in suggesting that Dr. Scharf's opinion should be discounted on the basis
10   of not having reviewed the record from the relevant period is, however, harmless. First, although
11   presumptive weight is no longer given to the opinions of treating or examining physicians in the
12   2017 regulations, the extent of the claimant's relationship with the medical provider—what can
13   be referred to as "relationship factors"—remains relevant. 20 C.F.R. §§ 404.1520c(b)(2),
14   416.920c(b)(2), (c); *Woods*, 32 F.4th at 790. The ALJ here discounted Dr. Scharf's opinion based
15   in-part on relationship factors, i.e., Dr. Scharf had examined plaintiff one time and the
16   examination conclusions were inconsistent with the longitudinal treatment record for the relevant
17   period. Tr. 36. Second, the ALJ cited numerous daily activities undertaken by plaintiff that were
18   inconsistent with the severity of the mental/social limitations opined by Dr. Scharf and were
19   more consistent with the assessed RFC. In the RFC, the ALJ found that plaintiff had sufficient
20   concentration, persistence, and pace to complete simple and detailed tasks (up to SVP 4) for a
21   normal workday and workweek; he should have no contact with the general public and only
22   occasional superficial contact with coworkers; and he should be in a predictable work setting
23

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 6

with no more than routine changes. Tr. 25. The ALJ cited substantial evidence for discounting the supportability and consistency of Dr. Scharf's opinion.

        a. **PA-C Mr. Martin**

In a July 2019 C&P exam, examining physician's assistant Mr. Martin opined that plaintiff's back condition and right leg condition would impact his ability to bend, twist, and lift greater than 20 pounds; that the back condition would impact plaintiff's ability to sit or stand for prolonged periods and frequently use stairs; and that plaintiff would have to be allowed to change positions frequently when needed. Tr. 608. The ALJ found Mr. Martin's opinion to be somewhat persuasive. Tr. 34. Although the ALJ found Mr. Martin's lifting limitation to be consistent with the record, she determined that Mr. Martin's opinion was vague in not specifying what constituted a "prolonged period" and what impact plaintiff's conditions had on his ability to bend and twist. Tr. 35. The ALJ also found that there was no support for a finding that plaintiff needed to frequently change positions as needed. *Id.* For example, plaintiff "was able to sit through the hearing and indicated he is able to drive for a[t] least an hour at a time." *Id.* Nevertheless, in consideration of plaintiff's pain complaints, the ALJ found that a limitation to standing and walking for two hours was better supported by the record. *Id.*

        Plaintiff concedes that Mr. Martin's opinion referring to limitations concerning bending, twisting, and "prolonged" sitting or standing was vague. Dkt. 18, at 6. Such vague statements are not useful in specifying a claimant's functional limits. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Plaintiff also contends that, contrary to the ALJ's conclusion, there was evidence of a need for plaintiff to frequently change positions as needed: state agency medical consultant Dr.

Alnoor Virji, M.D., had referred to the same limitation. Dkt. 13, at 14 (referring to Tr. 103).[1] The ALJ, however, explicitly discounted Dr. Virji's limitation regarding changing positions at will for the same reason she rejected Mr. Martin's restriction: the RFC already restricts plaintiff to two hours sitting or standing and "he was able to sit through the hearing without apparent discomfort and reported he is able to drive for a[t] least an hour at a time." Tr. 35. The ALJ cited substantial evidence for discounting the supportability and consistency of Mr. Martin's opinion

### b. Dr. Tuna

Plaintiff contends that the ALJ erred by failing to explicitly evaluate Dr. Tuna's opinion regarding plaintiff's limitations due to migraine headaches. Although the ALJ failed to refer to Dr. Tuna by name, any error in doing so was harmless because the ALJ cited and examined Dr. Tuna's opinion when discounting the severity of plaintiff's migraine symptoms, plaintiff has not challenged the ALJ's handling of the symptom testimony, and Dr. Tuna's "opinion" simply repeated the symptoms plaintiff described. *See* Tr. 29, 601–02.

In a July 2019 C&P exam, plaintiff told Dr. Tuna that his headaches were "5-10% reported as incapacitating, remainder slow the veteran down in all activities." Tr. 601. Dr. Tuna then described the functional impact of the headaches as "5-10% of headaches incapacitate the veteran, remainder slow the veteran down in all activities." Tr. 602. The ALJ referred to evidence of migraine headaches by citing to the treatment record over several years, including an explicit citation to Dr. Tuna's C&P exam and the claim that such migraines occurred "about three times a week lasting 12 to 16 hours with 5 to 10% incapacitating and the remainder slowing him down in all activities." Tr. 29 (citing Tr. 601). The ALJ discounted the severity of

---

[1] In the brief, plaintiff cited to an incorrect page in the transcript. Dkt. 13, at 14 (citing Tr. 11). Dr. Virji's opinion regarding alternating positions is on page 103 of the transcript.

that symptom testimony because plaintiff "continues to be prescribed medications for his migraines, but there is no evidence of any additional significant treatment for migraine symptoms during the period at issue." Tr. 29. Nevertheless, the ALJ chose to include some functional limitations relating to migraine precautions in the RFC, including environmental limitations. *Id.* Such environment limitations included having no more than frequent exposure to extreme cold, extreme heat, and hazards. Tr. 25. Thus, by citing substantial evidence for discounting plaintiff's symptom testimony about the severity of his migraine headaches, the ALJ cited substantial evidence to discount Dr. Tuna's opinion.

Although the ALJ may have erred by not referring to Dr. Tuna by name, this error was harmless because she reviewed Dr. Tuna's opinion and discounted the severity of the opined migraine headache symptoms with reference to substantial evidence and the supportability and consistency of those symptoms.

### 3. Jobs That Exist in Significant Numbers

Plaintiff contends that "the estimated number of jobs in the national economy for all the occupations provided by the Vocational Expert in this case are not 'significant' under Ninth Circuit law." Dkt. 13, at 15. The Court finds that plaintiff misstates Ninth Circuit law and the VE referred to an estimated number of jobs in the national economy that far exceeds any number that could be construed as a "close call."

The ALJ relied on the VE's testimony that Plaintiff could perform representative occupations such as production assembler (12,000 positions), document preparer (19,000 positions), and agricultural produce sorter (10,000 positions). Tr. 37–38. Thus, the ALJ concluded that plaintiff was not disabled because he was capable of performing over 40,000 representative jobs. Tr. 38. Although the Ninth Circuit has not set a bright line rule as to what

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 9

constitutes a significant number of jobs, in *Gutierrez v. Commissioner of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014), it held that 25,000 jobs in the national economy constituted a significant number of jobs, but it was a "close call." As the 40,000 jobs set forth in this case exceeds this "close call," the ALJ's finding cannot be said to lack substantial evidence or be based on a misapplication of the law. Without explanation, plaintiff contends that *Gutierrez* must mean that each occupation cited must have at least 25,000 jobs, even though the *Gutierrez* court itself considered two different jobs to arrive at the 25,000 jobs figure. *See Gutierrez*, 740 F.3d at 521, 529 (combining the 15,000 jobs as an assembler nationally with the 10,000 jobs as an almond blancher nationally to arrive at the 25,000 figure).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 7th day of June, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge